Syllabus.

# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## FILLER v. TYLER.

### JUNE 13, 1895.

Absent, Keith, P.*

1. COURT OF APPEALS—*Jurisdiction—Assignment—Presumption of Good Faith.*
   Where appellant is the owner of two judgments sought to be enforced
   which aggregate more than $500, but each of which is less than that
   sum, the Court of Appeals has jurisdiction of the appeal. If one of the
   judgments was acquired after suit brought, by assignment, which pur-
   ports on its face to be for value, it must be presumed to have been made
   in good faith until the contrary is made to appear.

2. CHANCERY JURISDICTION—*Injunction—Adequate Remedy at Law—Separate
   Estates.*—The quitable separate estate of a married woman is the creature
   of a court of equity, and, notwithstanding the provision of section 2999
   of the Code, an injunction will always be granted when necessary to
   protect, aid, or enforce any equitable estate or interest which she may
   have. Courts of equity having once acquired jurisdiction never lose it
   because jurisdiction of the same matters is given to courts of law, unless
   the statute conferring such jurisdiction uses prohibitory or restrictive
   words.

3. CHANCERY PLEADING—*Allegation and Proof—Settlement by Husband—Con-
   sideration.*—Although a bill by a wife to sustain and enforce a settlement
   made upon her by her husband is based chiefly on the agreement be-
   tween them, setting forth the consideration for the settlement, and there
   is no proof of the agreement, yet if the facts which show that she was
   the surety of her husband are fully stated in the bill, and it is distinctly
   alleged that she was such surety, and she asks for all the protection to
   which she is entitled as such surety, this is sufficient to warrant the
   court in granting to her such relief as she is entitled to by reason of her
   suretyship.

---

* Judge Keith decided the case in the Circuit Court.

4. HUSBAND AND WIFE—*Conveyance of Wife's Land—Presumption—Principal and Surety.*—Where a wife unites with her husband in conveying her maiden lands *absolutely*, the presumption is that she gives to her husband all her interest therein. But if such conveyance is not absolute, but in trust to secure the individual debts of her husband, then the wife becomes the surety of her husband, and, in the absence of any agreement to the contrary, is entitled to all the rights of a surety.

5. MARRIED WOMEN—*Equitable Separate Estates—Liability for Engagements made before Acquisition.*—The ground of the liability of the equitable separate estate of a married woman for her engagements is her intention to charge it, and her engagements can be enforced only against the equitable separate estate which she held at the time of entering into the engagement, or so much thereof as she owns when the decree is rendered, and not against that acquired after the time of entering into the engagement. *Crockett* v. *Doriot,* 85 Va. 240, approved.

Argued at Richmond.    Decided at Wytheville.

Appeal from two decrees of the Circuit Court of Loudoun county, one pronounced May 2, 1891, and the other January 19, 1892, in a suit in chancery wherein the appellee, Virginia H. Tyler, who sues by H. A. Hall, her next friend, was the complainant, and the appellant, Armistead T. M. Filler and others, were the defendants.

*Affirmed.*

This was a suit in chancery, instituted in the Circuit Court of Loudoun county by Virginia H. Tyler, who sues by H. A. Hall, her next friend, against Robert B. Wildman and others, defendants. The bill charges that three judgments have been recovered against Douglas Tyler, the husband of the complainant—one by the surviving partners of the firm of Wildman & Sons, for $185.73, with interest and costs; one by the Patapsco Guano Company for $332.54, with interest and costs; and one by Gertrude Humphrey for $150, with interest and costs. The bill further charges that executions had been issued on the first two judgments above mentioned, on No-

vember 12, 1890, and levied on certain personal property and on the crops of corn growing on two tracts of land mentioned in the return, and complainant is apprehensive that execution will also be issued on the last mentioned judgment; that Douglas Tyler had no interest in the property levied on, but that all of it was the property of complainant and the legal title thereto was vested in Eppa Hunton, Jr., her trustee; that she had inherited from her parents a valuable estate worth sixty thousand dollars; that Douglas Tyler was hopelessly insolvent and unable to support the family; that of the estate acquired by her from her parents the said Douglas had received $10,000 in cash, all of which he had spent, except a small amount of personal estate then on the farms; that the real estate acquired by her consisted of two farms worth at least $50,000; that she joined with her husband in deeds by which she had conveyed these lands in trust to secure debts of her husband, amounting to about $18,000; that the debts thus secured were the individual debts of Douglas Tyler, and by uniting with him in the deeds of trust to secure them, she thereby became the surety of her husband, and entitled to all the relief due a surety; that in consideration of her uniting in said deeds of trust, and as an inducement thereto, the said Douglas, contemporaneously with the execution of the last of said deeds, conveyed to Eppa Hunton, Jr., trustee, July 26, 1890, all of his estate, right, title and interest, present or future, in the lands inherited by her from her parents, and all the personal property which belonged to her, or in which he had any interest on either of said farms, including all stock, farming utensils and furniture, in trust for the sole, separate and exclusive use of complainant, free from the control and liabilities of her hubsand, with full power of disposition on her part; that the deed last mentioned covered all the property levied on; that if, from any cause, this deed does not afford her protection, she is entitled, on familiar princi-

ples, to a settlement out of her estate; and that she is threatened with a multiplicity of suits and endless costs. The execution creditors, the sheriff of Loudoun, and others are made defendants, and the prayer of the bill is for an injunction to stop the sale of the property levied on; that said property be decreed to be the property of complainant under the deed of settlement; that her rights to the property be protected, whether derived under the deed of settlement, or under her equity to a settlement, or as surety as aforesaid, and for general relief.

Mrs. Tyler appears to have been bound for only one of the debts mentioned in the bill on which judgment was recovered, and that was the debt of the Patapsco Guano Company. The judgment of the Patapsco Guano Company was recovered on a negotiable note, of which the following is a copy:

"$332.54.  Leesburg, Va., December 24, 1889.

Ninety days after date I promise to pay to V. H. Tyler, or order, three hundred and thirty-two 54-100 dollars, for value received. Negotiable and payable at the Loudoun National Bank, Leesburg, Va., without offset, and we, the drawer and endorser, each hereby waive the benefit of our homestead exemption as to this debt.

Douglas Tyler.

Endorsed: V. H. Tyler.

A. T. M. Filler.

Account with Patapsco Guano Company."

"The foregoing is copy of note filed with declaration in the action at law in which the Patapsco Guano Company was plaintiff, and Douglas Tyler, V. H. Tyler and A. T. M. Filler were defendants, and is referred to in the foregoing decree.

Teste:  E. L. Bennett, C. C."

While it appears that Mrs. Tyler was one of the defendants in the action at law, it nowhere appears in the record whether or not there was any judgment against her.

The bill was filed March 5, 1891, and on May 2, 1891, defendants demurred thereto and the demurrer was overruled.

On the date last mentioned it was suggested that A. T. M. Filler, the surety of Douglas Tyler on the debt to the Patapsco Guano Company, had paid the debt and taken an assignment thereof, and had also become the owner of the judgment in favor of Wildman & Co., and leave was given him to have his name entered as a defendant in the cause and to file his answer, and such cross-bill as he might be advised to file, in vacation, within sixty days from the adjournment of the court, and mature the same at Rules. On July 2, 1891, Filler filed his cross-bill, which he prayed might also be taken as an answer to the original bill. He denies that there was any such agreement between Tyler and wife as set forth in the deed of settlement, and charges that the deed was made to hinder, delay, and defraud the creditors of Tyler and wife, and especially Filler and his assignors. He charges that the Wildman debt was contracted almost entirely for articles used by Mrs. Tyler and her children after she had taken an assignment from her husband of all his property, which assignment she had concealed, and thus perpetrated a fraud on them; that the debt of the Patapsco Guano Company was contracted for guano used on said farms, and that Tyler and wife had both signed the note therefor, and if Mrs. Tyler had any separate estate it was bound for this debt, at least. He denies that Mrs. Tyler was surety for her husband for the greater part of the amount secured by the deeds of trust made by her, and also denies her equity to a settlement.

Tyler and wife filed separate answers to this cross-bill, denying most of the material allegations, but especially and particularly all fraud in law or fact in the execution of the deed of settlement, and denying that Filler was the *bona fide* assignee of the judgment of Wildman & Co.

*Alexander & Tebbs*, for the appellant.

*Eppa Hunton, Jr.*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The first question to be disposed of upon this appeal, is, whether or not this court has jurisdiction of it.

The appellant is the owner of two debts evidenced by judgments, neither of which amount to the sum of $500, but together amount to more than that sum. When the suit was instituted he was the owner of only one of the judgments, but before the decree was rendered in the cause settling the rights of the parties, he had become the owner of the other judgment by assignment. It is alleged in the pleadings of the appellees that the assignment was not made in good faith, but was obtained merely for the purpose of giving the appellant the right of appeal. If it was true that the assignment was not obtained in good faith and was merely colorable in order to give the right of appeal, this court would not have jurisdiction, but in order to defeat its jurisdiction the fact that the assignment was not made in good faith must be made to appear. *Fink Brothers & Co.* v. *Denny*, 75 Va. 663, 667-8; 2 Barton's Ch. Pr. 1113. The assignment purports on its face to be for value, and is under seal, and must be presumed to have been made in good faith in the absence of evidence to the contrary. The motion to dismiss for want of jurisdiction must therefore be overruled.

The appellant insists that his demurrer to the original bill ought to have been sustained, because the appellee had a complete and adequate remedy at law.

The bill was filed by the wife of Douglas Tyler to enjoin the sale of certain personal property, of which she claimed to be the equitable owner, and which had been levied on as the

property of her husband under executions issued upon the judgments owned by the appellant.

The bill alleges that she and her husband were married in the year 1869, that her parents died soon afterwards, and that from them she inherited real estate of the value of $50,000, and personal estate of the value of $10,000, which came into the possession of her husband; that he had little, if any, property of his own, and was a man without business capacity—the result was that he squandered the greater part of the personal property, and became heavily indebted; that in the year 1885 she agreed with her husband to convey in fee one of her two tracts of land inherited by her, as aforesaid, to satisfy certain individual debts of her husband, and to secure certain other debts which he owed, and that in consideration thereof, and contemporaneously therewith, he undertook to surrender and secure to her her inherited property, real and personal, free from his debts; that pursuant to this agreement she united with him in executing three deeds of trust upon her lands to secure his individual debts to the amount of $18,000. The first was executed in 1885 for $13,000, the second in 1888 for $1,500, and the third and last in 1890 for $3,500. Contemporaneously with the execution of the last mentioned deed of trust, and pursuant to the agreement aforesaid, her husband conveyed to a trustee, for her benefit, all the right, title, and interest which he had in the said real estate, together with the personal property which belonged to him, or which he had an interest in, upon the lands, including all stock, farming utensils, and furniture. This deed was duly recorded. She further alleges, among other things, that the amount for which she had bound her lands by uniting in the deeds of trust was much more than the value of her husband's marital rights or interest in her property; that in making such settlement, independently of their agreement, he was only doing what a court of equity

would have compelled him to do; that in uniting in the deeds
of trust, and thus charging her property with the payment of
her husband's debts, she became his surety and is entitled to
all the rights of a surety; that her husband is hopelessly in-
solvent; that the personal property settled upon her has been
levied on to satisfy the judgments of the appellant; that she
is threatened with a multiplicity of suits; and that, in order
to prevent such sale and to avoid such threatened litigation,
she has brought this suit, and desires to have all matters con-
nected therewith litigated, and, upon these grounds, prays
for an injunction to prevent a sale under the executions of the
appellant; and, upon a hearing of the cause, asks that the
property embraced in the deed of settlement be decreed to be
hers, and for general relief.

The demurrer to the bill, which appellant insists the Circuit
Court erred in overruling, is based upon the ground that sec-
tion 2999 of the Code of 1887 provided a complete and ade-
quate remedy at law, and that a court of equity has no juris-
diction of the case.

Even if all the relief to which Mrs. Tyler was entitled, upon
the facts stated in her bill, could have been had in a court of
law under the section of the Code referred to, a court of
equity would still have had jurisdiction.    The equitable sepa-
rate estate of a married woman is the creature of a court of
equity, and an injunction will always be granted, where
necessary, to protect, aid, or enforce any equitable estate, or
interest, which she may have.    3 Pomeroy's Eq. Jur. sec.
1345.    Courts of equity, having such jurisdiction before the
enactment of the statute now found in section 2999 of the
Code of 1887 (see Revisors' Report of Code of 1849, page 765,
note,) still retain it, although the statute may furnish a com-
plete and adequate remedy at law.    Courts of equity having
once acquired jurisdiction never lose it because jurisdiction of
the same matters are given to law courts, unless the statute

giving such jurisdiction uses prohibitory or restrictive words. 1 Barton's Ch. Pr. 60, 61.   The Circuit Court did not err in overuling the dermurrer.

Another error assigned is, that the Circuit Court erred in sustaining the validity of the deed of settlement.

The record shows, as stated above, that Mrs. Tyler had united in three deeds of trust charging the land inherited from her parents with the payment of debts amounting to $18,000, of which sum more than $16,000 remained due and unpaid; it further shows that her husband was sixty years of age, and utterly insolvent; that the annual rental value of her lands is $1,500, and that the personal property embraced in the deed of settlement and levied on, was worth about one hundred dollars more than the appellant's debts.

Mrs. Tyler does not attempt to prove the agreement between herself and her husband, set up in the bill, and her right to relief upon that ground is wholly unsupported, and was abandoned in argument by her counsel.

She relies entirely for relief upon the ground that when she united with her husband in each of the three deeds of trust charging her maiden lands with her husband's individual debts, she became the surety of her husband, and that she is entitled to all the rights of a surety, and that since her lands are bound for and will have to be subjected to the payment of those debts, which are greater in amount than the value of her insolvent husband's rights in her lands, the conveyance made for her protection is valid and binding.

The record shows sufficiently, we think, that the debts secured by the deeds of trust were the individual debts of the husband; at least, it appears that the notes evidencing such indebtedness were his individual notes, and, in the absence of proof that the money for which they were given went into the hands of the wife for her own use as her separate estate, the presumption is that the debts secured are the debts of the

husband. *Huntington* v. *Huntington*, 2 White & Tudor's Lead. Cases, part (2), page 1929; Clancy's Rights of Married Women, 589-90.

It also shows that the amount of the husband's debts charged upon the wife's lands is greater than the value of the property conveyed by the husband for her protection. If, therefore, the wife can be considered as the husband's surety, and as entitled to the rights of a surety against the husband and his creditors, the conveyance made for her benefit must be sustained.

It is well settled in this State that where a wife unites with her husband in conveying her maiden lands absolutely, the presumption is that she gives to her husband all her interest therein, and it is insisted that the same presumption arises when she unites with her husband in charging her lands with the payment of his debts, and that she does not thereby become his surety unless there is an express agreement to that effect.

Counsel do not refer to, nor has the court, in its researches, been able to find, any decision of this court, upon this question. It was decided in England at an early day, viz., in 1702, in the case of *Huntington* v. *Huntington*, 2 Lead. Cases in Eq. (part 2) 1922, that where a wife unites with her husband in putting a mortgage upon her estate of inheritance for the benefit of her husband, her estate was only a surety for his indebtedness.

In the English notes to that case it is said it is a well-established general rule that whenever husband and wife mortgage her estate of inheritance for the benefit of her husband, the wife or heir will be entitled after the death of the husband to have it exonerated out of the estate of her husband, real and personal, her estate being only considered as a surety for his debt. Even, it is said, a creditor of a wife may, upon the refusal of her representatives, file a bill to obtain such exonera-

tion, and a number of cases are cited to sustain the statement made in the note, including decisions made by Lord Hardwicke and Lord Eldon.

Lord Chancellor Westbury, in the case of *Gleaves* v. *Paine*, 1 De Gex, Jones, and Smith, 87, 95, decided in the year 1863, said: "The estate of the husband being mortgaged in the manner here described for the husband's debt, the wife unquestionably assumes, in the eye of a court of equity, the character of a surety for the husband. Properly speaking, she is not a surety, but she is so called by analogy. She has title to call upon her husband to exonerate her estate from the debt."

The Court of Appeals of New York, in such cases, treats the wife or her estate as the surety of her husband, and holds, as do the English courts, that she is entitled to all the rights of a surety.

In the case of the *Bank of Albion* v. *Burns and others*, 46 N. Y. 170, 174, it was said: "The property of the wife having been mortgaged to secure the debt of her husband, she occupied the position of a surety, with all the rights, legal and equitable, incident to that relation; and the defendants, having succeeded by inheritance to the estate and interest of their mother, occupy the same position, and are entitled to every defense which could have availed the original mortgagor had she lived. *Gahn* v. *Niemcericz*, 11 Wend. 312; *Loomer* v. *Wheelwright*, 3 Sand. Ch. Rep. 135; *Smith* v. *Townsend*, 25 N. Y. 479."

In *Loomer* v. *Wheelwright*, 3 Sand. Ch., at page 135, it is said: "I see no reason why a different rule should be applied to the wife's case from that which is applied in other instances of principal and surety. If I mortgage my farm to secure my friend's debt, and the creditors know it is my farm, I become surety for my friend, and the creditor is bound to respect that relationship. The law indulges him in no pre-

sumption that I intend to make a gift to my friend, or that the debt was secured in some way for the benefit of my property. Why should such a conjecture or presumption be applied to the wife in order to disparage her claim as surety ? If there should be any different rule, it ought rather to provide an inference in her favor than to strain a point against her."

Clancy, in his work on the Rights of Married Women, says: "If wife join her husband in a mortgage of her real estate (also of her separate estate) for his debt, she will be considered in equity as his creditor." Clancy's Rights of Married Women, 589.

"Where a wife," he says, "joins her husband in a mortgage of her estate for his debt, the inference drawn by a court of equity from these circumstances is that she intends to be repaid; and even though the equity of redemption should be reserved to the husband and his heirs, still there is a resulting trust to the wife after the objects of the mortgage have been satisfied." Clancy on Rights of Married Women, 590; Bish. on Law of Married Women, sec. 604.

The strongest reason urged against holding that the wife under such circumstances should be treated as a surety is that it will encourage the perpetration of frauds on the part of husband and wife. The opportunity for fraud in cases where the wife unites with her husband in charging her real estate with his individual debts cannot be very great, since her title to her lands will generally appear of record, as will also the mortgage or deed of trust charging them, and the creditors of the husband will have all the necessary means of ascertaining the ownership of the lands and the character of the charges thereon. But if it were otherwise, the wife cannot be deprived of her rights simply because the relation between her and her husband may enable him the more easily to defraud his creditors. The English courts, as above shown, treated her

in such ·cases as surety when the rules of the common law pre-
vailed in all their rigor, and the rights of the wife were much
less liberally dealt with than now.

Both upon principle and precedent, we think, that a mar-
ried woman who unites with her husband by mortgage, or
deed of trust, in charging her inherited land with the indi-
vidual debts of her husband, should be considered as the sure-
ty of her husband and entitled to all the rights of a surety
in the absence of any agreement to the contrary.

In this case the consideration furnished by the wife was
ample for the settlement made upon her by her husband, and
the Circuit Court rightly held that the deed of settlement
was valid.

It is claimed by the appellant that the settlement made
upon Mrs. Tyler by her husband cannot be sustained upon
the ground that she was his surety, because no such case is
made in her bill.   It is true, the bill is based chiefly upon the
agreement between her and her husband alleged to have been
made in the year 1885, but the facts which show that she
was her husband's surety are fully stated in the bill, and it is
also distinctly alleged that she was his surety, and she asks
for all the protection to which she is entitled as surety.   It
would have been better pleading to have stated her case as
surety more fully, but we think the allegations and prayer
of the bill are sufficient to entitle her to the relief granted her
by the Circuit Court.

The appellant insists that, if it be held that such convey-
ance is valid, and that Mrs. Tyler became the owner of the
property thereby conveyed for her own separate use, free
from the debts of her husband, still she is bound for the judg-
ment of the Patapsco Guano Company against her husband
and the appellant, and which has been paid by the latter,·
because the note upon which that judgment is founded is the .
joint note of her husband and herself.   This assignment of

error cannot be sustained.   The note upon which the appellant's judgment is founded was made by Douglas Tyler and endorsed by his wife, Mrs. Tyler, and at the time the note was made and endorsed she owned no separate estate.   This note was executed and endorsed prior to July, 1890, when the deed of settlement was made.   The agreement set up in the bill between Mrs. Tyler and her husband, by which he undertook to make a settlement upon her, was prior to the execution and endorsement of the note, but that agreement was not proved, and no rights were acquired under it by the wife.   Unless the wife had the power to charge her separate estate acquired after the note was so endorsed upon which appellant's judgment was founded, the note was a mere nullity as to her.   The agreements of a married woman differ from contracts proper, inasmuch as they give rise to no personal remedy against the married woman, but only to a remedy against her separate estate.

This court held in *Crockett* v. *Doriot*, 85 Va. 240, that the *statutory separate estate* of a married woman could not be subjected for her engagements entered into prior to the acquisition of such estate.   There does not seem to be any reason why the rule should be different in the case of her *equitable separate estate*.

The ground upon which courts of equity have subjected her equitable separate estate for her engagements has been, that both she and the party with whom she made her engagements dealt with reference to her existing separate estate.   Mr. Pomeroy lays down what seems to be the correct rule upon the subject, as follows : ''If a married woman, *having separate estate*, enters into an engagement, which, if she were a *feme sole*, would constitute a personal obligation against her, and in entering into such engagement she purports to contract, not for her husband (*i. e.*, not in behalf of her husband as his agent), but for herself and on the credit of her separate estate,

and it was so intended by her, and so understood by the person with whom she is contracting, that constitutes an obligation for which the person with whom she is contrating has the right to make her separate estate liable.'' 3 Pomeroy Eq. Jur., sec. 1121.

Tested by this rule, it is clear that the equitable separate estate, acquired after her engagements had been entered into, cannot be subjected for their payment; for, neither she nor the party with whom she entered into the engagements can be presumed to have dealt with reference to what did not exist when the engagements were made.

We are of opinion that the contracts or engagements of a married woman can be enforced against the equitable separate estate only which she held at the time of entering into the engagement, or so much thereof as she owns when decree is rendered, and not against equitable separate estate which was acquired after the time of making the engagement.

We are of opinion that there is no error in the decree complained of, and that it should be affirmed.

AFFIRMED.